## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID HEINTZ** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 18-366** |
| **ARTHUR LAWSON,** *et al.* | **SECTION: "G"(1)** |

## <u>ORDER</u>

Pending before the Court is Defendants' Motion to Dismiss.[1] In this litigation, Plaintiff David Heintz ("Plaintiff"), a former Gretna police officer, asserts claims against the following Defendants: the City of Gretna; Arthur Lawson ("Lawson"), the Chief of the Gretna Police Department; and Anthony Christiana ("Christiana"), the Deputy Chief of the Gretna Police Department (collectively, "Defendants").[2] Plaintiff claims that Defendants disciplined and discriminated against him for failing to comply with the Gretna Police Department's quota system, ultimately leading to Plaintiff's constructive discharge.[3] Plaintiff brings claims for violations of his First Amendment rights pursuant to 42 U.S.C. § 1983 against the City of Gretna and against Lawson and Christiana in their individual and official capacities. Plaintiff also claims that Defendants violated Louisiana Revised Statute 23:967, which prohibits employer retaliation against whistleblowers, by constructively discharging him for speaking out against the allegedly unlawful quota system.[4] Having considered the motion, the memoranda in support and in

---

[1] Rec. Doc. 6.

[2] Rec. Doc. 1 at 1–2.

[3] *Id.* at 2–5.

[4] *Id.* at 8–10.

1

opposition, and the applicable law, the Court will grant the motion in part, deny the motion in part, and grant Plaintiff leave to amend the complaint and file a Rule 7(a)(7) reply.

## I. Background

### A.    *Factual Background*

According to the Complaint, Plaintiff was employed as a police officer with the Gretna Police Department from April 2006 until January 13, 2017, when he resigned as sergeant within the Patrol Division.[5] Plaintiff claims that an "arrest and citation quota system" has been in place within the Gretna Police Department since at least 2007.[6] Plaintiff claims that as part of his duties as a supervisory official, he was directed to issue formal disciplinary actions in the form of "write-ups" to patrol officers for "unsatisfactory performance" when these officers would fail to meet the departmental quota.[7] Plaintiff claims that at the time he was employed by the City of Gretna, he was aware that departmental quotas were illegal for police officers.[8]

Plaintiff claims that he was "twice issued discipline in the form of a write up for unsatisfactory performance for failure to meet the department quota."[9] Plaintiff also claims that he refused to issue discipline to his patrol officers for failure to adhere to the departmental quota policy.[10] Plaintiff claims that he spoke out against the policy multiple times with individuals both

---

[5] Rec. Doc. 1 at 2–3.

[6] *Id.* at 3.

[7] *Id.* at 3–4.

[8] *Id.* at 5.

[9] *Id.* at 4.

[10] *Id.* at 5.

inside and outside of the Department, including Christiana directly.[11] Plaintiff claims that due to his outspokenness against the quota policy, he was passed up for promotion multiple times, reassigned to a less prestigious and lucrative position, and received a poor performance review.[12] Specifically, Plaintiff alleges he was told he was not a "team player" and was labeled as a "rat" in a division meeting.[13] Plaintiff claims that his resignation was ultimately a result of a constructive discharge and that he left the Department because he was afraid he would be terminated, which would detrimentally impact his future career in law enforcement.[14]

### B. *Procedural Background*

Plaintiff filed a Complaint on January 11, 2018, alleging that Defendants violated his First Amendment rights and Louisiana whistleblower laws.[15] Defendants filed the instant Motion to Dismiss Plaintiff's claims pursuant to Rule 12(b)(6) on May 4, 2018.[16] Plaintiff filed an opposition on May 15, 2018.[17] Defendants filed a reply brief, with leave of Court, on May 22, 2018.[18]

## II. Parties' Arguments

### A. *Defendants' Arguments in Support of the Motion to Dismiss*

In the Motion to Dismiss, Defendants state the Court should dismiss the case for failure to

---

[11] *Id.* at 6–7.

[12] *Id.* at 7–8.

[13] *Id.* at 5.

[14] *Id.* at 3.

[15] Rec. Doc. 1.

[16] Rec. Doc. 6.

[17] Rec. Doc. 10.

[18] Rec. Doc. 13.

state a claim upon which relief can be granted.[19] Specifically, Defendants allege five reasons that the Court should grant the Motion to Dismiss.

First, Defendants concede that the Complaint sufficiently states a claim regarding the City of Gretna, but Defendants contend that the Complaint contains no specific allegations whatsoever that any action of either Lawson or Christiana violated Plaintiff's First Amendment rights.[20] Therefore, Defendants assert that Plaintiff's claims against Lawson or Christiana should be dismissed because Plaintiff does not allege any facts which could give rise to a claim against them.[21]

Second, Defendants claim that Lawson and Christiana are entitled to qualified immunity in their individual capacities.[22] Defendants argue that the two-part framework for analyzing whether a defendant is entitled to qualified immunity applies: (1) do the facts alleged show the officer's conduct violated a constitutional right, and (2) was the constitutional right clearly established in that it would be clear and reasonable to an officer that his or her conduct violated that right.[23] Defendants assert that Lawson and Christiana are entitled to qualified immunity because there are no factual allegations raised in the Complaint to show they were involved in any

---

[19] Rec. Doc. 6.

[20] Rec. Doc. 6-1 at 2.

[21] *Id.* at 3.

[22] *Id.* at 3–7.

[23] *Id.* at 4.

alleged violation of Plaintiff's constitutional rights.[24]

Third, Defendants claim that respondent superior is not a viable legal theory with which to hold Lawson and Christiana liable, and thus recovery is precluded under 42 U.S.C. § 1983.[25] Specifically, Defendants claim that an individual official or supervisor cannot be held liable for a government policy that denies a plaintiff certain rights if that official is not personally responsible for the implementation of that policy in some specifically articulated way.[26]

Fourth, Defendants claim that the official capacity claims against Lawson and Christiana are duplicative of the same claims brought against the City of Gretna for the implementation of the alleged policy and thus are prohibited by law.[27] Relatedly, Defendants claim that Section 1983 does not allow for the recovery of punitive damages in this case because the claims brought against the individual defendants and the City of Gretna are the same, and punitive damages are not awarded for claims brought against government entities.[28]

Fifth, Defendants claim that Lawson and Christiana cannot be liable under the Louisiana Whistleblower Act, Louisiana Revised Statute 23:967.[29] Defendants claim that the Court should interpret the term "employer" to refer to the City of Gretna, but not the individuals at issue in this

---

[24] *Id.* at 5.

[25] *Id.*

[26] *Id.* at 6.

[27] *Id.* at 7.

[28] *Id.* at 8.

[29] *Id.*

case, and that the Louisiana Whistleblower Act only applies to employers.[30]

### B.  *Plaintiff's Arguments in Opposition to the Motion to Dismiss*

In opposition, Plaintiff reasserts that the Complaint satisfies the pleading requirements as related to all Defendants.[31] Plaintiff argues that for his claim to survive the Motion to Dismiss he must "establish that the defendant was either personally involved in the deprivation or that his wrongful actions were casually connected to the deprivation."[32] Plaintiff claims he has met this standard by alleging that both individual defendants, Lawson and Christiana, "had the authority to issue adverse employment action against Plaintiff."[33] Plaintiff then repeats his assertion from the Complaint that the Gretna Police Department had a "longstanding policy of implementing a quota system."[34] In regards to Lawson specifically, Plaintiff claims that Lawson issued a directive to Plaintiff "to formally discipline patrol officers for failing to meet the department's quota system."[35] In regards to Christiana specifically, Plaintiff claims that he "spoke out against the quota system" to Christiana and that "within a week or two after speaking to [Christiana], plaintiff was subject to transfer and demotion…[and] criminal investigation for reporting police brutality."[36] Plaintiff further alleges that Lawson and Christiana "were the two highest ranking officers in the Gretna Police Department who had the authority to take adverse employment action against Plaintiff" and

---

[30] *Id.* at 9.

[31] Rec. Doc. 10 at 6.

[32] *Id.* (quoting *Jones v. Lowndes County*, 678 F.3d 344, 349 (5th Cir. 2012) (internal citation omitted)).

[33] *Id.*

[34] *Id.* at 7.

[35] *Id.*

[36] *Id.*

were both aware of Plaintiff's opposition to the quota system.[37] In the alternative, if the Court determines a need for more specificity, Plaintiff requests that the Court allow him to amend his complaint to cure any deficiencies.[38]

Next, Plaintiff argues that Lawson and Christiana are not entitled to qualified immunity because they were "aware" that he spoke against the quota system and "in retaliation for this constitutionally protected speech…[they] took adverse employment action against plaintiff."[39] Further, Plaintiff argues that the municipality is not sheltered from the actions of the individual policymakers because "particular officers may have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances."[40] Plaintiff claims that "it was held that municipal liability under § 1983 attaches where a deliberate choice to follow a course of action is made from among various alternative [sic] by the official or officials responsible for establishing final policy with respect to the subject matter in question."[41] Therefore, Plaintiff claims that municipal liability is appropriate where the officials knew or should have known an illegal quota policy was in place and the officials at issue here had the authority to discipline or promote officers based on participation in the system.[42]

Regarding the duplicative nature of official capacity claims brought against individuals and

---

[37] *Id.* at 7–8.

[38] *Id.* at 8.

[39] *Id.* at 11.

[40] *Id.* at 14.

[41] *Id.* (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)).

[42] *Id.* at 16.

those claims brought against the City of Gretna, Plaintiff argues that "[t]o the extent that this Honorable Court finds that those claims are duplicative, defendants' assert[ions] are likely correct as [to] those particular claims only."[43] And relatedly, regarding punitive damages, Plaintiff concedes that punitive damages are only appropriate against individual defendants and not the municipality in this case.[44]

Finally, regarding the Louisiana Whistleblower Act claim, Plaintiff argues that Lawson and Christiana are "employers" for the purposes of the present case.[45] Plaintiff asserts that Louisiana state courts have held "that a police chief was an employer of one of his police officers for the purposes of the Whistleblower statute."[46] Plaintiff claims that the important factor to consider in determining an employer relationship is "the right of control and supervision over an individual," which resided in Lawson and Christiana here.[47] For these reasons, Plaintiff asserts that the Motion to Dismiss should be denied or, alternatively, Plaintiff should be granted an opportunity to amend the Complaint.[48]

## C.    *Defendants' Arguments in Further Support of the Motion to Dismiss*

In further support of the Motion to Dismiss, Defendants argue that Plaintiff has failed to present factually sufficient allegations to show that Lawson or Christiana "[were] personally

---

[43] *Id.* at 19.

[44] *Id.* at 17.

[45] *Id.*

[46] *Id.* (citing *Ray v. City of Bossier City*, 859 So.2d 264, 272 (La.App. 2 Cir. 10/24/03)).

[47] *Id.* at 18.

[48] *Id.* at 19.

involved in the deprivation or that [their] wrongful actions were casually [sic] connected to the deprivation."[49] Defendants argue that Plaintiff's references to the actions and directives of Lawson and Christiana in the current motion and supporting documents are not supported by the Complaint.[50] Defendants argue that "there are no facts that his 'demotion', which is unsupported because he retained the rank of sergeant, and his involvement in a criminal investigation had anything whatsoever to do with him speaking out or that Arthur Lawson and/or Anthony Christiana, individually, participated in this alleged adverse employment action as a result of his exercising his First Amendment right."[51] Further, Defendants claim that even if the Court were to grant leave to amend the complaint, the proposed amendments would not cure its deficiencies.[52]

Defendants claim that Plaintiff has not and cannot meet his burden to plead facts that would overcome qualified immunity.[53] Relatedly, Defendants claim that Plaintiff's arguments relying on *Monell* liability are misplaced and should be decided in regards to the City of Gretna at a later time.[54] Finally, in regards to the Louisiana Whistleblower Act and the definition of an "employer," Defendants argue that Lawson and Christiana are agents of the City of Gretna, while the city

---

[49] Rec. Doc. 13 at 2 (quoting *Jones v. Lowndes County*, 678 F.3d 344, 349 (5th Cir. 2012)).

[50] Id. at 3–5.

[51] *Id.* at 5.

[52] *Id.*

[53] *Id.* at 7–9.

[54] *Id.* at 7, 9.

remains the employer itself.[55]

## III. Legal Standard

### A. *Legal Standard on a Rule 12(b)(6) Motion to dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[56] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[57] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[58] "Factual allegations must be enough to raise a right to relief above the speculative level."[59] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[60]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[61] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[62] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[63]

---

[55] *Id.* at 9–10.

[56] Fed. R. Civ. P. 12(b)(6).

[57] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[58] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[59] *Twombly*, 550 U.S. at 556.

[60] *Id.* at 570.

[61] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[62] *Iqbal*, 556 U.S. at 677–78.

[63] *Id.* at 679.

Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[64] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[65] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[66] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[67] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[68]

## B.    *Qualified Immunity*

To plead a Section 1983 claim, Plaintiff is required to allege facts demonstrating that (1) the defendant violated the Constitution or federal law, and (2) that the defendant was acting under the color of state law while doing so.[69]

The doctrine of qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly

---

[64] *Id.* at 678.

[65] *Id.*

[66] *Id.*

[67] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[68] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[69] *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

established statutory or constitutional rights of which a reasonable person would have known."[70] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[71] In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[72] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[73]

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity.[74] Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[75] Part two inquires into whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[76] The Court does not have to address these two questions sequentially; it can proceed with either inquiry first.[77]

---

[70] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[71] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

[72] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[73] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[74] 533 U.S. 194 (2001).

[75] *Id.* at 201.

[76] *Id.* at 202.

[77] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).

"If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'"[78] Officials "who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[79]

In the context of a motion to dismiss, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[80] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[81] After the district court determines that plaintiff's pleadings meet this requirement, "if the court remains 'unable to rule on the immunity defense without further clarification of the fact,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[82]

## IV. Analysis

Plaintiff claims that Defendants disciplined him and discriminated against him for failing to comply with the Department's quota system, ultimately leading to Plaintiff's constructive

---

[78] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

[79] *Williams*, 180 F.3d at 703 (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)).

[80] *Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995)).

[81] *Id.* at 645.

[82] *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987).

discharge.[83] Plaintiff brings claims for violations of his First Amendment rights pursuant to 42 U.S.C. § 1983 against the City of Gretna and against Lawson and Christiana in their individual and official capacities. Plaintiff also claims that Defendants violated Louisiana Revised Statute 23:967, which prohibits employer retaliation against whistleblowers, by constructively discharging him for speaking out against the allegedly unlawful quota system.[84] Defendants contend that Plaintiff's Section 1983 claims against both Lawson and Christiana in their individual and official capacities should be dismissed.[85] Defendants also seek dismissal of Plaintiff's request for punitive damages under Section 1983.[86] Finally, Defendants argue that Plaintiff's Louisiana Whistleblower Act claims against Lawson and Christiana should be dismissed.[87] Accordingly, the Court will address each of these claims in turn.

## A. Plaintiff's Section 1983 claims

Defendants contend that Plaintiff's Section 1983 claims against both Lawson and Christiana in their individual and official capacities should be dismissed.[88] Defendants also seek dismissal of Plaintiff's request for punitive damages under Section 1983.[89] Plaintiff opposes the motion to the extent it seeks dismissal of his Section 1983 claims against Lawson and Christiana

---

[83] Rec. Doc. 1 at 2–5.

[84] *Id.* at 8–10.

[85] Rec. Doc. 6-1 at 1–7.

[86] *Id.* at 7–8.

[87] *Id.* at 8–9.

[88] Rec. Doc. 6-1 at 1–7.

[89] *Id.* at 7–8.

in their individual capacities and the Louisiana Whistleblower Act claims.[90] However, Plaintiff does not appear to contest Defendants' assertion that the official capacity claims against Lawson and Christiana are duplicative of the claims against the City of Gretna.[91] Plaintiff also does not contest that punitive damages are not available against the City of Gretna.[92]

### 1. Individual Capacity Claims Against Lawson and Christiana

The parties do not dispute that employees are entitled to protection for the exercise of their First Amendment rights. An employee of a public entity may not be discharged for exercising his First Amendment right to freedom of expression, despite an at-will employment status.[93] Moreover, an employee of a public entity may not be subjected to adverse employment action for exercising his First Amendment rights to freedom of expression.[94] "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."[95] To succeed on a Section 1983 claim against an official in his or her individual capacity, a plaintiff must "establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation."[96] This standard requires more than conclusory

---

[90] Rec. Doc. 10 at 5–15.

[91] *Id.* at 19.

[92] *Id.* at 17.

[93] *Cabrol v. Town of Youngsville*, 106 F.3d 101 (5th Cir. 1997); *Thompson v. City of Starkville, Miss.*, 901 F.2d 456 (5th Cir. 1990); *Brawner v. City of Richardson, Tex.*, 855 F.2d 187 (5th Cir. 1988).

[94] *Id.*

[95] *Breaux v. City of Garland, Tex.*, 205 F.3d 150, 157 (5th Cir. 2000); *Hays v. LaForge*, 113 F.Supp.3d 883 (N.D. Miss. 2015).

[96] *Jones v. Lowndes County*, 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008)).

assertions.[97] "Plaintiffs suing governmental officials in their individual capacities…must allege specific conduct [and] facts giving rise to a constitutional violation."[98]

Defendants concede that the Complaint likely states a sufficient First Amendment claim regarding the City of Gretna, but Defendants contend that the Complaint contains no specific allegations whatsoever that any action of either Lawson or Christiana violated Plaintiff's First Amendment rights.[99] Defendants claim that Plaintiff's conclusory assertions against Lawson and Christiana are insufficient to state a claim against them.[100] Thus, this Court's inquiry is focused on the conduct that Plaintiff alleges and whether this alleged conduct violated his First Amendment right.

According to the Complaint, Plaintiff was employed as a police officer with the Gretna Police Department from April 2006 until January 13, 2017, when he resigned as sergeant within the Patrol Division.[101] Plaintiff claims that an "arrest and citation quota system" has been in place within the Gretna Police Department since at least 2007.[102] Plaintiff alleges that as part of his duties as a supervisory official, he was directed to issue formal disciplinary actions in the form of "write-ups" to patrol officers for "unsatisfactory performance" when these officers would fail to meet the departmental quota.[103] Plaintiff claims that at the time he was employed by the City of

---

[97] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).

[98] *Id.*

[99] Rec. Doc. 6-1 at 2.

[100] *Id.* at 3.

[101] Rec. Doc. 1 at 2–3.

[102] *Id.* at 3.

[103] *Id.* at 3–4.

Gretna, he was aware that departmental quotas were illegal for police officers.[104]

Plaintiff alleges that he was "twice issued discipline in the form of a write up for unsatisfactory performance for failure to meet the department quota."[105] Plaintiff also claims that he refused to issue discipline to his patrol officers for failure to adhere to the departmental quota policy.[106] According to the Complaint, Plaintiff spoke out against the policy multiple times with individuals both inside and outside of the Department, including Christiana directly.[107] Plaintiff claims that due to his outspokenness against the quota policy, he was passed up for promotion multiple times, reassigned to a less prestigious and lucrative position, and received a poor performance review.[108] Specifically, Plaintiff alleges he was told he was not a "team player" and was labeled as a "rat" in a division meeting.[109] Plaintiff claims that his resignation was ultimately a result of a constructive discharge and that he left the Department because he was afraid he would be terminated, which would detrimentally impact his future career in law enforcement.[110]

However, noticeably absent from these allegations are any reference to the conduct of Lawson or Christiana. The sole reference to Lawson in the Complaint states: "In 2007 Arthur Lawson was the Chief of the Gretna Police Department and has remained in this capacity until

---

[104] *Id.* at 5.

[105] *Id.* at 4.

[106] *Id.* at 5.

[107] *Id.* at 6–7.

[108] *Id.* at 7–8.

[109] *Id.* at 5.

[110] *Id.* at 3.

present day."[111] And the sole reference to Christiana in the Complaint states: "In August 2016, I spoke out to Deputy Chief, Anthony Christiana, of internal impropriety within the Gretna Police Department, the existing unlawful quota system and policy and an incident of police brutality."[112] The alleged facts do not show a violation of Plaintiff's constitutional rights by either Lawson or Christiana.

In opposition to this motion, Plaintiff states that "[b]oth the Chief of Police, Arthur Lawson and Deputy Chief Anthony Christiana had the authority to issue adverse employment action against Plaintiff."[113] Plaintiff also states that the directive to implement the alleged quota system at issue "came from the Chief."[114] Plaintiff then states that "official[s] of the Gretna Police Department, including [Lawson] and [Christiana] knew that Plaintiff was speaking out against the Gretna Police Department's illegal activities." [115] Therefore, Plaintiff asserts that "upon information and belief they did in fact take adverse employment action against him in the form of a demotion and institution of a criminal investigation against him, ultimately constructively discharging him from his position as a Gretna Police Officer."[116] But Plaintiff does not allege specific facts in the Complaint that support these claims and show what adverse employment action both individual defendants took against him. "Adverse employment actions are discharges,

---

[111] *Id.* at 4.

[112] *Id.* at 6.

[113] Rec. Doc. 10 at 6.

[114] *Id.* at 7.

[115] *Id.*

[116] *Id.* at 8.

demotions, refusals to hire, refusals to promote, and reprimands."[117] The mere authority to issue an adverse employment action is not enough to bring a claim against an individual, Plaintiff must allege facts specific to each Defendant's conduct that show the defendant's involvement in an adverse employment action, beyond a mere conclusory statement regarding that defendant's authority to effect an adverse employment action. Accordingly, Plaintiff has not carried his burden of alleging facts that would overcome the pleading standard under Rule 12(b)(6) or that would overcome a qualified immunity defense.

Plaintiff requests that "should the [Court] determine the need for more specificity in his allegations that he be allowed to amend his complaint."[118] The Court recognizes that a motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[119] Short of granting a motion to dismiss, a court may grant Plaintiff leave to amend the complaint.[120] Therefore, the Court will grant the Plaintiff leave to amend the Complaint to address the deficiencies noted herein. In granting leave to amend, the Court says nothing about the viability of amendments proposed by Plaintiff in the opposition to the instant motion.[121]

Additionally, the Fifth Circuit in *Schultea v. Wood* explained that once a defendant asserts qualified immunity, a district court may order the plaintiff to submit a reply pursuant to Federal Rule of Civil Procedure 7(a)(7), after evaluating the complaint under the ordinary pleading

---

[117] *Breaux*, 205 F.3d at 157 (5th Cir. 2000).

[118] Rec. Doc. 10 at 8.

[119] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[120] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[121] *See* Rec. Doc. 10 at 8–9.

standard.[122] Therefore, the Fifth Circuit has generally found that, when faced with a motion to dismiss, a district court ought to allow a plaintiff to file a Rule 7(a)(7) reply before dismissing a case on the basis of qualified immunity.[123] Pursuant to *Schultea*, this reply "must be tailored to the assertion of qualified immunity and fairly engage its allegations."[124] Accordingly, considering this precedent, the Court will deny Defendants' motion to dismiss to the extent it seeks dismissal of the individual capacity claims against Lawson and Christiana in their individual capacities based on a defense of qualified immunity and grant Plaintiff leave to amend his complaint to allege facts "tailored to an answer pleading the defense of qualified immunity."[125]

### 2.     *Respondeat Superior*

Plaintiff does not dispute that Lawson and Christiana may not be held liable on a theory of *respondeat superior*. Generally, to be liable under Section 1983, a supervisor must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights.[126] A supervisor that is not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under Section 1983 only if: 1) the sheriff failed to train or supervise the officers

---

[122] *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995).

[123] *See Todd v. Hawk*, 66 F.3d 320 (5th Cir. 1995) ("*Schultea* makes it clear that this two-step process—requiring the plaintiff to file a short and plain statement of his claim pursuant to Rule 8(a)(2) followed by a more particularized reply pursuant to Rule 7—is the preferred procedure preceding consideration of a motion to dismiss on grounds of qualified immunity.").

[124] *Schultea v. Wood*, 47 F.3d at 1433.

[125] *Id.* at 1433.

[126] *Cronn v.Buffington*, 150 F.3d 538, 544 (5th Cir. 1998); *Thompkins v. Belt*, 828 F.2d 298,303-04 (5th Cir. 1987); *Alton v. Texas A & M University*, 168 F.3d 196, 200 (5th Cir. 1999).

involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiffs rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.[127] Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference.[128] The plaintiff must generally demonstrate at least a pattern of similar violations.[129] Furthermore, the inadequacy of training must be obvious and obviously likely to result in a constitutional violation.[130] To the extent that Plaintiff brings a claim against Lawson or Christiana based on a theory of *respondeat superior*, such a claim is dismissed with prejudice, because Plaintiff does not properly allege a failure to train and does not dispute Defendants' assertion that Lawson and Christiana cannot be held liable under a theory of *respondeat superior*.

### 3. *Official Capacity Claims against Lawson and Christiana*

Further, Plaintiff's claims against the officers in their official capacity fails because it is duplicative of his claim against the City of Gretna. In *Kentucky v. Graham*, the Supreme Court held that an official capacity suit is "only another way of pleading an action against an entity of which an officer is an agent" and is to be treated as a suit against the entity.[131]   The Fifth Circuit

---

[127] *Thompson v. Upshur County*. 245 F.3d 447, 458-59 (5th Cir. 2001) citing *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998), *Doe v. Taylor Independent School District*, 15 F.3d 443, 452-54, n.7-8 (5th Cir. 1994) (en banc); *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986).

[128] *Id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798–99 (5th Cir. 1998); *Belt*, 828 F.2d at 304–305)

[129] *Id.* (citing *Snyder*, 142 F.3d at 798)

[130] *Id.* (citing *City of Canton*, 109 S.Ct. at 1205 n.10 (1989); *Snyder*, 142 F.3d at 799).

[131] 473 U.S. 159, 165 (1985).

has enforced an identical rule and barred claims brought in a single action against official capacity individuals and against the entity of which they are members. In *Sims v. Jefferson Downs Racing Association, Inc.*, the Fifth Circuit held that, due to the nature of official capacity suits, a judgment against a corporation and its officer would "effectively make the corporation liable twice for the same act."[132] Moreover, a judgment against an individual acting in an official capacity and against the entity that employs him on the same claim is equivalent to a judgment against the entity twice over, and is therefore barred by virtue of subjecting a defendant-entity to "duplicative" or "redundant" liability.[133] However, separate claims brought against an official and his entity in the same action are permitted and governed by the general rules of pleading.[134]

To the extent Plaintiff asserts Section 1983 claims against Defendants Lawson and Christiana in their official capacities, those claims appear to mirror the Section 1983 claim against the City of Gretna—that Plaintiff's constitutional right to free speech was violated by the Gretna Police Department's discipline and constructive discharge of Plaintiff for speaking out against the quota system, pursuant to the Department's policy of implementing a quota system. As previously stated, the Fifth Circuit has held that such actions are barred by virtue of subjecting a defendant-entity to "duplicative" or "redundant" liability.[135] Accordingly, Plaintiff was required to clarify in his pleadings if he is in fact asserting different claims against Lawson and Christiana in their official capacities and the City of Gretna, otherwise, the Court must dismiss one of the duplicative

---

[132] 778 F.2d 1068, 1081 (5th Cir. 1985).

[133] *See Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 262 (5th Cir. 1999); *see also Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001).

[134] *Id*.

[135] *Indest*, 164 F.3d at 262; *Romero*, 256 F.3d at 355.

claims or sets of claims. As Plaintiff has not clarified any difference in claims, the Court will dismiss the Section 1983 claims against Defendants Lawson and Christiana in their official capacities, and proceed with analysis of Plaintiff's Section 1983 First Amendment claim against the City of Gretna.

### 4.    *Request for Punitive Damages*

Plaintiff seeks punitive damages against the City of Gretna and Lawson and Christiana in their individual capacity.[136] However, as Plaintiff recognizes in his opposition to the instant motion,[137] Section 1983 does not allow for the recovery of punitive damages against a municipal entity.[138] Therefore, the request for punitive damages as to the City of Gretna is dismissed with prejudice. To the extent Defendants seek dismissal of Plaintiff's request for punitive damages against individual defendants Lawson and Christiana, the Court will deny the motion at this time as the Court has granted Plaintiff leave to amend the Complaint with respect to the claims against the individual defendants.

## B.    *Plaintiff's Louisiana Whistleblower Act Claim*

Finally, Defendants seek dismissal of Plaintiff's Louisiana Whistleblower Act claim against the individual defendants, because Defendants contend that Lawson and Christiana are not employers under the Louisiana Whistleblower Act.[139] In opposition, Plaintiff argues that Lawson

---

[136] Rec. Doc. 1 at 10.

[137] Rec. Doc. 10 at 17.

[138] *Collier v. Roberts* (M.D. La., 2015) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

[139] Rec. Doc. 6-1 at 8–9.

and Christiana are "employers" for the purposes of the present case.[140]

Louisiana Revised Statute 40:2401.1(A) states:

No municipality or any police department thereof, nor any parish or any sheriff's department thereof, shall establish or maintain, formally or informally, a plan to evaluate, promote, compensate, or discipline a law enforcement officer on the basis of the officer making a predetermined or specified number of any type or combination of types of arrests or require or suggest to a law enforcement officer, that the law enforcement officer is required or expected to make a predetermined or specified number of any type or combination of types of arrests within a specified period.

Section (B) of the statute likewise prohibits police departments from establishing traffic citation quotas.

Louisiana Revised Statute 23:967(A) states, in pertinent part: "An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law: (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law . . . (3) Objects to or refuses to participate in an employment act or practice that is in violation of law." Under Section 23:967(C)(1), "reprisal" includes firing. Section 23:967(B) states: "An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs."

The question here is whether Lawson and Christiana are "employers" within the definition of the statute. Although the statute itself does not define "employer," courts have consistently applied the definition of "employer" as set forth in La. Rev. Stat. § 23:302, Louisiana's general

---

[140] Rec. Doc. 10 at 17–18.

employment discrimination statute.[141]  According to La. Rev. Stat. § 23:302, "employer" means "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee."

It is clear in the instant case that Lawson and Christiana are not Plaintiff's employer, but rather agents of his employer: the City of Gretna. Therefore, the state law claims against Lawson and Christiana are dismissed with prejudice. The state law claim against the City of Gretna remains.

## IV. Conclusion

While Defendants concede that Plaintiff brings a sufficient claim against the City of Gretna, Plaintiff has failed to meet the pleading standard under Rule 12(b)(6) regarding individual Defendants Lawson and Christiana because Plaintiff has failed to state facts upon which relief can be granted. Nevertheless, the Court will deny the motion to dismiss the individual capacity claims at this time and grant Plaintiff leave to amend his complaint and cure those deficiencies. Further, as Plaintiff has not alleged facts that can overcome a qualified immunity defense, pursuant to Fifth Circuit precedent, the Court will allow Plaintiff to file a Rule 7(a)(7) reply tailored to the qualified immunity defense.

To the extent that Plaintiff brings a Section 1983 claim against Lawson and Christiana under a theory of *respondeat superior*, the Court dismisses such a claim. Furthermore, the Court

---

[141] *See, e.g.*, *English v. Wood Group PSN, Inc.*, No. 15-568, 2015 WL 5061164, at *10-11 (E.D. La. Aug. 25, 2015); *Langley v. Pinkerton's Inc.*, 220 F. Supp. 2d 575, 580 (M.D. La. 2002) (the full definition of 23:302 applies to 23:967 regardless of the fact that 23:967 is found in Chapter 9 rather than in 3—A); *Johnson v. Hosp. Corp. of America*, 767 F. Supp. 2d 678, 691 n. 2 (W.D. La. 2011).

dismisses any official capacity claims brought against Lawson and Christiana under Section 1983 because they are duplicative to the claims against the City of Gretna. Additionally, the Court dismisses any request for punitive damages against the City of Gretna under Section 1983 because of well-established law barring such a claim.

Finally, the Court dismisses, with prejudice, Plaintiff's Louisiana Whistleblower Act claims against Lawson and Christiana because they do not qualify as "employers" within the definition of the statute. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss[142] is **GRANTED IN PART** to the extent that Plaintiff's Section 1983 claims against Lawson and Christiana based on a theory of *respondeat superior* and in their official capacity, Plaintiff's Louisiana Whistleblower Act claims against Lawson and Christiana, and Plaintiff's request for punitive damages against the City of Gretna are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Motion to Dismiss is **DENIED** in all other respects. Plaintiff is granted leave to file a Rule 7(a)(7) reply as to Plaintiff's Section 1983 claims against Lawson and Christiana in their individual capacities and to amend the complaint within fourteen days of this Order to cure the deficiencies noted, if possible.

**NEW ORLEANS, LOUISIANA,** this _7th_ day of January, 2019.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[142] Rec. Doc. 6.