UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| DAVID HEINTZ | CIVIL ACTION |
|---|---|
| VERSUS | CASE NO. 18-366 |
| ARTHUR LAWSON, *et al.* | SECTION: "G"(1) |

# ORDER

Pending before the Court is Defendants Arthur Lawson ("Lawson"), Anthony Christiana ("Christiana"), and the City of Gretna's ("Gretna") (collectively, "Defendants") Motion for Summary Judgment.[1] In this litigation, Plaintiff David Heintz ("Plaintiff"), a former Gretna police officer, asserts that Defendants disciplined and discriminated against him for failing to comply with the Gretna Police Department's quota system, ultimately leading to Plaintiff's constructive discharge.[2] Plaintiff brings claims for violations of his First Amendment rights pursuant to 42 U.S.C. § 1983 against Gretna and against Lawson and Christiana in their individual and official capacities.[3] Plaintiff also claims that Gretna violated Louisiana Revised Statute 23:967, which prohibits employer retaliation against whistleblowers, by constructively discharging him for speaking out against the allegedly unlawful quota system.[4] Having considered the motion, the memoranda in support and in opposition, and the applicable law, the Court denies the motion.

---

[1] Rec. Doc. 29.

[2] Rec. Doc. 1 at 1–5; Rec. Doc. 22 at 3.

[3] Rec. Doc. 1 at 8–9.

[4] *Id.* at 9–10.

## I. Background

According to the Complaint, Plaintiff was employed as a police officer with the Gretna Police Department from April 2006 until January 13, 2017, when he resigned as sergeant within the Patrol Division.[5] Plaintiff claims that an "arrest and citation quota system" has been in place within the Gretna Police Department since at least 2007.[6] Plaintiff claims that as part of his duties as a supervisory official, he was directed to issue formal disciplinary actions in the form of "write-ups" to patrol officers for "unsatisfactory performance" when these officers would fail to meet the departmental quota.[7] Plaintiff claims that at the time he was employed by the City of Gretna, he was aware that departmental quotas were illegal for police officers.[8]

Plaintiff claims that he was "twice issued discipline in the form of a write up for unsatisfactory performance for failure to meet the department quota."[9] Plaintiff also claims that he refused to issue discipline to his patrol officers for failure to adhere to the departmental quota policy.[10] Plaintiff claims that he spoke out against the policy multiple times with individuals both inside and outside of the Department, including Christiana directly.[11] Plaintiff claims that due to his outspokenness against the quota policy, he was passed up for promotion multiple times,

---

[5] *Id.* at 2–3.

[6] *Id.* at 3.

[7] *Id.* at 3–4.

[8] *Id.* at 5.

[9] *Id.* at 4.

[10] *Id.* at 5.

[11] *Id.* at 6–7.

reassigned to a less prestigious and lucrative position, and received a poor performance review.[12] Specifically, Plaintiff alleges he was told he was not a "team player" and was labeled as a "rat" in a division meeting.[13] Plaintiff claims that his resignation was ultimately a result of a constructive discharge and that he left the Department because he was afraid he would be terminated, which would detrimentally impact his future career in law enforcement.[14]

Plaintiff filed a Complaint on January 11, 2018, alleging that Defendants violated his First Amendment rights and Louisiana whistleblower laws.[15] Defendants filed a Motion to Dismiss Plaintiff's claims pursuant to Rule 12(b)(6) on May 4, 2018.[16] Plaintiff filed an opposition on May 15, 2018.[17] Defendants filed a reply brief, with leave of Court, on May 22, 2018.[18]

On January 7, 2019, the Court issued an order granting the motion to dismiss in part and denying the motion in part.[19] The Court granted the motion in part, and dismissed Plaintiff's *respondeat superior*, official capacity, and whistleblower claims against Christiana and Lawson with prejudice.[20] The Court also dismissed Plaintiff's request for punitive damages against Gretna

---

[12] *Id.* at 7–8.

[13] *Id.* at 5.

[14] *Id.* at 3.

[15] Rec. Doc. 1.

[16] Rec. Doc. 6.

[17] Rec. Doc. 10.

[18] Rec. Doc. 13.

[19] Rec. Doc. 21.

[20] *Id.* at 26.

with prejudice.[21] However, the Court denied the motion in part, finding that Plaintiff had stated a Section 1983 claim against Gretna.[22] The Court also found that Plaintiff did not state a Section 1983 claim against Lawson and Christiana in their individual capacities, but granted Plaintiff leave to amend the complaint and ordered Plaintiff to file a Rule7(a)(7) reply tailored to Lawson and Christiana's qualified immunity defense.[23]

On January 21, 2019, Plaintiff filed an amended complaint, in which he repeated several allegations from the original complaint and presents some additional allegations against Lawson and Christiana.[24] Plaintiff alleges that Lawson and Christiana advised him in a meeting that as a consequence of his speaking out on the quota system, "any infraction lodged against [Plaintiff] would lead to immediate termination of [his] employment."[25] Plaintiff also alleges that other supervisors "expressly mandated [his] adherence" to the quota system and that his supervisor stated that "this mandate and directive came from the Chief."[26] Plaintiff alleges that after making statements regarding the quota system, Christiana advised him that he was reassigned to a demoted position and that several days later Christiana personally informed Plaintiff that he was on administrative leave.[27] Finally, Plaintiff alleges that when he was transferred back to his original position, Lawson and Christiana placed him on a two-day suspension and a one-year probationary

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] Rec. Doc. 22 at 1–2.

[25] *Id.* at 2.

[26] *Id.*

[27] *Id.* at 3–5.

4

period.[28]

Also on January 21, 2019, Plaintiff filed a Rule 7(a)(7) reply, asserting that Lawson and Christiana were aware of Plaintiff's opposition to the quota system and subsequently took adverse employment action against him.[29] Plaintiff argues that the Fifth Circuit has found "a reasonable officer" should know that he or she would be liable for adverse employment actions aimed at silencing the First Amendment rights of employees that disclose official misconduct.[30] Plaintiff then argues that Lawson and Christiana had the "sole authority" to discipline, demote or terminate Plaintiff's employment, and that Lawson and Christiana engaged in "reprisal and retaliation" when Plaintiff spoke out against the quota system.[31]

Defendants filed the instant motion for summary judgment on June 4, 2019.[32] Plaintiff filed an opposition on June 11, 2019.[33] With leave of Court, Defendants filed a reply on June 26, 2019.[34]

---

[28] *Id.* at 5.

[29] Rec. Doc. 23 at 1.

[30] *Id.* at 2.

[31] *Id.* at 3.

[32] Rec. Doc. 29.

[33] Rec. Doc. 35.

[34] Rec. Doc. 42.

## II. Parties' Arguments

*A.     Defendants' Arguments in Support of the Motion for Summary Judgment*

In the motion, Defendants argue that Plaintiff's claims are time-barred as he did not file them within one year of actual or constructive notice of his claim.[35] Defendants argue that Section 1983 actions are subject to the relevant state statute of limitations, in this case, one year.[36] Defendants argue that Plaintiff gained constructive notice of his claims when he allegedly spoke out against the quota system and faced alleged reprisal for speaking out.[37] Further, Defendants argue that all of the alleged instances where Plaintiff spoke out or was subject to an adverse employment action occurred more than a year before this suit was filed on January 11, 2018.[38] Defendants argue that the last relevant date in the complaint is Plaintiff's resignation, which occurred on January 5, 2017.[39] Therefore, because Plaintiff did not file the complaint within a year of these events, Defendants argue that Plaintiff's claims are prescribed.

*B.     Plaintiff's Arguments in Opposition to the Motion for Summary Judgment*

In opposition, Plaintiff argues that the complaint was timely filed on January 11, 2018, as he resigned on January 13, 2017, within one year of filing this suit.[40] Plaintiff argues that under Louisiana law, the statute of limitations in a constructive discharge case begins to run from the

---

[35] Rec. Doc. 29-1 at 2.

[36] *Id.* at 4.

[37] *Id*. at 5.

[38] *Id.* at 5–6.

[39] *Id*. at 6.

[40] Rec. Doc. 35 at 2.

6

"effective date of the plaintiff's resignation."[41] Plaintiff argues that he submitted a letter of resignation on January 5, 2017, which designated the effective date of his resignation as January 13, 2017.[42] Therefore, Plaintiff argues that this lawsuit, filed on January 11, 2018, fell within the one year prescriptive period triggered by the effective date of his resignation.[43]

As evidence of his effective resignation date, Plaintiff attaches his letter of resignation, dated January 5, 2017, which states the following:

> After being employed by the Gretna Police Department for approximately 11 years, I have decided to resign and continue my police career with another agency. On January 13, 2017, I will return all of my department issued equipment.[44]

Plaintiff also states in an unsworn declaration that his last shift ended at 7:00 am on January 11, 2017,[45] and provides a deposit notice showing that he was paid through the pay period ending January 12, 2017.[46]

### C.  *Defendants' Arguments in Further Support of the Motion to Dismiss*

In further support of the motion, Defendants argue that Plaintiff misapplies Louisiana law, as Plaintiff failed to plead a continuing tort that would extend the prescriptive period to Plaintiff's effective resignation date.[47] Defendants argue that "where there are multiple discrete tortious acts, each of which would suffice independently to put Plaintiff on notice, then they are conventional

---

[41] *Id.* at 7 (citing *King v. Phelps Dunbar, L.L.P.*, 743 So.2d 181 (1999)).

[42] *Id.* at 8–9.

[43] *Id.* at 9.

[44] Rec. Doc. 35-3.

[45] Rec. Doc. 35-5.

[46] Rec. Doc. 35-4.

[47] Rec. Doc. 42 at 4.

7

torts, and cannot be grouped together into a continuing tort."[48] Defendants argue that in this case, Plaintiff alleges multiple actions that would constitute a conventional tort on their own, specifically, Defendants passing up Plaintiff for promotion, giving him negative yearly evaluations, and suspending him for two days and placing him on probation for one year.[49] Defendants argue that each of these actions is a distinct tort and put Plaintiff on notice, therefore starting the relevant prescriptive period.[50]

Defendants argue that Plaintiffs reference to a "hostile work environment" in the complaint are conclusory, as each specific instance of retaliatory conduct is a non-continuing tort.[51] However, Defendants argue that even if the Court were to find the existence of a continual tort in this case, courts only look to the effective resignation date as the start of the prescriptive period, where the effective resignation date is the last day on which continuing tortious action occurred.[52] Defendants argue that the last adverse employment action alleged in the complaint was Plaintiff's suspension on November 7, 2016.[53] Therefore, Defendants argue that whether the Court treats Plaintiff's claims as distinct torts or a continuous tort, Plaintiff's claims are prescribed, as the last adverse employment action occurred more than a year before this case was filed.[54]

---

[48] *Id.* at 6 (citing *Messer v. Meno*, 130 F.3d 130, 134-35 17 (5th Cir. 1997); *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998) ("Moore argues that the continuing violation doctrine may apply only, if at all, to the hostile environment claim, rather than to the specific instances of demotion and failure to promote. We agree.")).

[49] *Id.* at 7.

[50] *Id.* at 7–8.

[51] *Id.* at 8–9.

[52] *Id.*

[53] *Id.* at 11.

[54] *Id*. at 11–14.

## III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[55] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[56] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[57] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[58] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[59]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[60] Thereafter, the nonmoving party

---

[55] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[56] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[57] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[58] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[59] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[60] *Celotex*, 477 U.S. at 323.

should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[61] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[62] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[63] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[64] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[65] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[66] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[67]

---

[61] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[62] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[63] *Little*, 37 F.3d at 1075.

[64] *Anderson*, 477 U.S. at 248.

[65] *Little*, 37 F.3d at 1075.

[66] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[67] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

## IV. Analysis

Plaintiff claims that Defendants disciplined him and discriminated against him for failing to comply with the Department's quota system, ultimately leading to Plaintiff's constructive discharge.[68] In the motion, Defendants argue that Plaintiff's claims are time-barred as he did not file them within one year of actual or constructive notice of his claim.[69] The parties do not dispute that a one-year prescriptive period applies to Plaintiff's claims under Section 1983 and the Louisiana whistleblower statute.[70] Instead, the parties dispute when the prescriptive period began.

Plaintiff claims that he was employed as a police officer with the Gretna Police Department from April 2006 until January 13, 2017, when he resigned as sergeant within the Patrol Division.[71] Plaintiff claims that an "arrest and citation quota system" has been in place within the Gretna Police Department since at least 2007.[72] Plaintiff claims that he spoke out against the policy multiple times with individuals both inside and outside of the Department.[73] Plaintiff claims that as a result, Defendants disciplined him and discriminated against him, leading to Plaintiff's constructive discharge.[74]

Regarding specific tortious action, Plaintiff alleges that he was "twice issued discipline in

---

[68] Rec. Doc. 1 at 2–5.

[69] Rec. Doc. 29-1 at 2.

[70] *See Nolan v. Jefferson Parish Hospital Service District No. 2*, 01-175 (La. App. 5 Cir. 6/27/01), 790 So.2d 725, 733; *Wilson v. Garcia*, 471 U.S. 261, 279 (1985).

[71] Rec. Doc. 1 at 2–3.

[72] *Id.* at 3.

[73] *Id.* at 6–7.

[74] *Id*. at 2–5.

11

the form of a write up for unsatisfactory performance for failure to meet the department quota."[75] Specifically, Plaintiff alleges that at a performance review he was told he was not a team player, did not discipline subordinates, was too outspoken, and was too firm in his beliefs. Plaintiff alleges that he was "told many times that [Plaintiff] was not a 'team player' and on one occasion labeled as a 'rat' in a division roll-call meeting."[76] Plaintiff alleges that he was passed up for promotion from Sergeant to Lieutenant in January 2015, July 2015, December 2015, January 2016, and November 2016.[77] Plaintiff alleges that on August 21, 2016, he was reassigned to a "less prestigious" position, to his "serious financial detriment."[78] Plaintiff alleges that on August 26, 2016, he was called into a meeting with supervisors and was asked questions regarding his adherence to the quota system, along with other accusations of police brutality.[79] On September 1, 2016, Plaintiff alleges he was placed under investigation for "malfeasance."[80] On September 2, 2016, Plaintiff alleges that he was placed on administrative leave.[81] On November 7, 2016, Plaintiff alleges that Defendants transferred him back to his original position, but issued disciplinary action for "unsatisfactory performance" in the form of a two-day suspension and

---

[75] *Id.* at 4.

[76] *Id.* at 5.

[77] *Id*. at 6.

[78] *Id.* at 7.

[79] Rec. Doc. 22 at 4.

[80] *Id.*

[81] *Id.* It is unclear from the complaint and amended complaint whether Plaintiff was placed on leave due to his actions regarding the quota system or a concurrent investigation regarding police brutality.

placed him on a one year probationary period.[82] Plaintiff alleges that he was told that he would be "terminated for any alleged infraction" during this probationary period and remained on probation when he resigned on January 13, 2017.[83]

All these individual instances of alleged misconduct occurred more than one year prior to the date Plaintiff filed the instant lawsuit, January 11, 2018.[84] However, Plaintiff argues that Defendants' conduct constituted a continuous tort and that he was constructively discharged as a result of Defendants' conduct.[85] Therefore, Plaintiff argues that the prescriptive period began on the date of his effective resignation, January 13, 2017.[86] Although Defendants dispute whether Plaintiff's letter of resignation established an effective resignation date of January 13, 2017, the Court will resolve the conflict in favor of the non-moving party for the purposes of this motion and treat January 13, 2017 as Plaintiff's effective resignation date.[87] Alternatively, Plaintiff argues that the prescriptive period should run from the date his pay period ended, January 12, 2017,[88] or the last day he worked, January 11, 2017,[89] either of which would fall within the one year prescriptive period.

Plaintiff presents cases where Louisiana courts have found that when "continuous

---

[82] *Id.* at 5.

[83] *Id.*

[84] Rec. Doc. 1.

[85] Rec. Doc. 22 at 3.

[86] Rec. Doc. 35 at 2.

[87] *See Little*, 37 F.3d at 1075.

[88] Rec. Doc. 35 at 12 (citing Rec. Doc. 29-2 at 25–26).

[89] *Id.* (citing Rec. Doc. 29-2 at 25–26).

harassment" creates a "hostile work environment," the prescriptive period runs from the point where the tortious conduct ends, commonly at the point of resignation or constructive discharge.[90] The Fifth Circuit has recognized that "[a]dverse employment actions can include discharges, demotions . . . and reprimands."[91] To prove a constructive discharge, a plaintiff must show that a "reasonable person in [his] shoes felt compelled to resign."[92] "[A] constructive discharge claim requires a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment."[93] In *Benningfield v. City of Houston*, the Fifth Circuit held that the plaintiff's fear of future retaliation was not sufficient to support her claim of constructive discharge.[94]

Plaintiff points to his own deposition testimony as evidence that he was demoted and reprimanded for speaking out against the quota system, and that ultimately, the conduct of Defendants led to his constructive discharge.[95] In his deposition, Plaintiff states that he was twice issued discipline in the form of a write up for unsatisfactory performance for failure to meet the department quota.[96] Plaintiff states that he received a poor performance review after speaking out

---

[90] Rec. Doc. 35 at 6 (citing *King v. Phelps Dunbar, L.L.P.,* 743 So.2d 181 (1999); *Buck v. Vermillion Parish School Bd.,* 2000-0542 (La. App. 3rd Cir. 3/28/01); 783 So.2d 583; *Pilie v. Shaw Environmental & Infrastructure, Inc*. 13-1105 (La. App. 1st Cir. 6/5/14); 2014 WL 3555966, *writ denied*, 14-1414 (La. 10/3/14); 149 So.3d 801).

[91] *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).

[92] *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) (internal citation and quotation marks omitted).

[93] *Id.*

[94] *Id.*

[95] Rec. Doc. 35 at 9 (citing Rec. Doc. 29-2 at 29–32, 46, 47,49–51).

[96] Rec. Doc. 29-2 at 29–32.

about the quota system and was told he was not a "team player" and "doesn't participate."[97] Plaintiff states that he was passed up for promotion as a result of his failure to comply with the quota system.[98] Plaintiff states that eventually he was demoted to a different position, put on administrative leave, and subject to an internal investigation.[99] As a result of the investigation, Plaintiff states he was suspended for two days for "unsatisfactory performance."[100] Plaintiff also states that he was put on probation for a year and assigned to a supervisor who has a "reputation of being the policeman that will screw another policeman over in a heartbeat."[101] This probation continued until Plaintiff resigned.[102]

Whether or not the demotions and reprimands were issued because of Plaintiff's speech about the quotas, and whether those actions were of a "greater severity or pervasiveness of harassment" than that of a hostile work environment is a question of material fact. For a resignation to constitute constructive discharge, an employer's actions must make conditions so intolerable that the reasonable employee would feel compelled to resign.[103] Interference with future employment opportunities may constitute conditions so intolerable that a reasonable employee would feel compelled to resign, but this determination is a factual inquiry not fit for summary

---

[97] *Id.* at 52.

[98] *Id.* at 47, 50–52.

[99] *Id.* at 88–93.

[100] *Id.* at 101–104.

[101] *Id.* at 57–58.

[102] *Id.*

[103] *Shawgo v. Spradlin*, 701 F.2d 470, 481 (5th Cir. 1983); *Kelleher v. Flawn*, 761 F.2d 1079, 1086 (5th Cir. 1985).

15

judgment.[104] Plaintiff presents evidence that the actions of Defendants may have negatively impacted his ability to obtain future employment, as his own attached declaration states that "[d]isciplinary actions also affect an officer's ability to be hired with another police department."[105]

Ultimately, the evidence of discipline which Plaintiff puts forth raises a disputed issue of material fact as to the cause of the termination of his employment, such that a reasonable trier of fact could find that Plaintiff was constructively discharged on January 13, 2017 or in the alternative on January 11, 2017 or January 12, 2017. As there exists a dispute of material fact, summary judgment is not appropriate at this stage and the Court denies Defendants' motion.

---

[104] *Kelleher*, 761 F.2d at 1086 ("It is unclear whether the question is one of fact or a mixed question of fact and law.").

[105] Rec. Doc. 29-3 at 20.

## IV. Conclusion

Summary judgment is not appropriate at this stage. Plaintiff puts forth evidence demonstrating a dispute of material fact regarding whether Defendants' conduct, specifically the disciplinary action allegedly resulting from Plaintiff's opposition to the quota system, led to his constructive discharge within the one-year prescriptive period for his claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment[106] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this __18th__ day of July, 2019.

                                                **NANNETTE JOLIVETTE BROWN**
                                                **CHIEF JUDGE**
                                                **UNITED STATES DISTRICT COURT**

---

[106] Rec. Doc. 29.